**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Marie Behling, | No. CV11-954-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Michael J. Astrue, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Jane Behling appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits.  The Court now rules on her appeal (Doc. 23.)

I.   **BACKGROUND**

A.   **Procedural History**

Plaintiff filed for disability insurance pursuant to Title II of the Act on April 17, 2007.  She alleged disability since October 28, 2006.  Plaintiff's application was denied initially and on reconsideration.   Administrative Law Judge (the "ALJ") Ronald Dickinson held a hearing on August 7, 2009, which Plaintiff and a vocational expert attended.   The ALJ issued a decision denying Plaintiff's application for benefits on November 24, 2009.  Plaintiff filed her appeal with this Court on May 12, 2011.

B.   **Medical Background**

The following is only a summary of the medical evidence found in the

administrative record.[1]  Plaintiff's impairments include: cognitive disorder, as a result of brain aneurysms and aneurysm clipping surgeries; anxiety disorder; and depression/dysthymic disorder.  Plaintiff also has a history of alcohol abuse in partial remission, but the ALJ did not find alcohol abuse material to the disability determination.

In April 2004, Plaintiff underwent aneurysm clipping surgery for two or three acute brain aneurysms.  In 2005, she had a second aneurysm clipping surgery for two acute brain aneurysms.  In November 2006, she had aortic valve replacement surgery to address heart disease. After her aortic valve replacement surgery, Plaintiff required surgery for placement of a dual chamber permanent pacemaker.

On August 24, 2007, Elizabeth Ottney, D.O., examined Plaintiff at the request of the state agency.  Plaintiff complained of depression and anxiety.  She reported her daily activities as: reading; watching television; and taking care of her 13-year-old daughter. Plaintiff complained of short-term memory loss and claimed she had to write things down to remember them.  Dr. Ottney found Plaintiff had good hygiene and was not anxious during the examination.  She determined that Plaintiff was alert and oriented times four with normal speech, cognition, hearing, affect mood, judgment, and intact memory.  Dr. Ottney found that Plaintiff had no physical restrictions and did not appear to have any short-term memory loss because she could relate the details of her medical history with good accuracy.

Plaintiff presented to John Hopkins, M.D., on September 20, 2007 with complaints of stress, difficulty adjusting to her new environment, and fatigue.   Dr. Hopkins diagnosed brain aneurysm, benign hypertension, hyperlipidemia, and major depression. On February 1, 2008, Plaintiff told Dr. Hopkins she was "quite anxious."  Dr. Hopkins found Plaintiff alert, cooperative, and not in any acute distress.  Dr. Hopkins adjusted Plaintiff's medications after noting she had ongoing anxiety that her medication was not helping.  On March 11, 2008, Dr. Hopkins found Plaintiff alert and cooperative without

---

[1] The summary focuses on Plaintiff's cognitive deficits and mental impairments because she claims those are her disabling limitations.

acute distress, but she had slurred speech and hesitant thought processing.

Brent Geary, Ph.D., examined Plaintiff on March 14, 2008 at the request of the state agency. Dr. Geary found Plaintiff had satisfactory eye contact and attention span with normal motor functioning. She denied any abnormalities of thought or perception. Plaintiff described her mood as good and bad. Dr. Geary noted that Plaintiff was hesitant to admit she was depressed, saying she was more frustrated than depressed, but she did acknowledge that she had reduced energy, was withdrawn and unmotivated at times, blue in mood, and restricted in her range of activities. Dr. Geary found Plaintiff had some difficulty in executing functioning, most notably when she left her home. Dr. Geary diagnosed Plaintiff with mild to moderate dysthymic disorder of late onset; possible cognitive disorder not otherwise specified due to aneurysm with impairment of attention and concentration and executive functioning; and alcohol dependence in full sustained reported remission.

Dr. Geary completed a "Psychological/Psychiatric Medical Source Statement," wherein he opined that Plaintiff's impairments imposed limitations for twelve months. He found that Plaintiff had no limitations in understanding, mild limitations in memory and social interaction, and moderate limitations in holding her attention since her brain aneurysm (flustered and anxious outside her home with diminished concentration and task orientation) and focusing.

On March 25, 2008, Plaintiff presented to Charles Stout, M.D., her treating cardiologist. Dr. Stout found Plaintiff's pacemaker was functioning normally and that she had regular heart rate and rhythm. Dr. Stout completed a "Cardiac Residual Functional Capacity Questionnaire," in which he stated that Plaintiff had palpitations. Dr. Stout found that Plaintiff's physical limitations and symptoms caused emotional difficulties such as depression and chronic anxiety. He opined that emotional factors contributed to the severity of her symptoms and limitations and that she often experienced symptoms severe enough to interfere with attention and concentration.

Brady Dalton, Psy.D., a state agency psychologist, reviewed the evidence and

completed a "Psychiatric Review Technique" form.  He opined Plaintiff had mild restriction of her daily living activities; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and had no episodes of decompensation.  He completed a "Mental Residual Functional Capacity Assessment" wherein he assigned moderate limitations on Plaintiff's abilities to understand, remember, and carry out detailed instructions, maintain attention, complete a normal workday and workweek, respond appropriately to changes in a work setting, and set realistic goals or make plans independently of others.  He concluded Plaintiff had the mental residual functional capacity for simple work.

On April 28, 2008, Plaintiff presented to Marc Wasserman, M.D., her neurologist, because she was having difficulty concentrating.  He referred her for psychiatric follow-up because she suffered from depression and anxiety.  On July 14, 2008, Dr. Wasserman found Plaintiff had normal neurological functioning and that she seemed less anxious.  Plaintiff told him was feeling calmer.

Plaintiff underwent emergency room treatment for acute alcohol poisoning on June 29, 2008.  Plaintiff was hospitalized on July 6, 2008 after inadvertently taking approximately eleven Xanax tablets.

Will Schultz, Ph.D., examined Plaintiff on October 9, 2008 at the request of Dr. Wasserman.  Dr. Schultz conducted a neurobehavioral status examination and administered a battery of standardized neuropsychological tests.  He found Plaintiff was alert, generally oriented, appropriately groomed, and appeared to have a right facial droop.  She had normal speech; linear, logical, and coherent thought processes; fair judgment and insight; full affect (although she seemed to have difficulty recognizing social cues); and mild impulsivity.  Dr. Schultz administered the Wechsler Adult Intelligence Scale and Wechsler Memory Scale.  Plaintiff's test performance revealed impairment in executive functioning, visuospacial skills, and bilateral fine motor speed consistent with ruptured aneurysm and multiple aneurysm clippings. Dr. Schultz found that Plaintiff's test results, depression, difficulty in regulating emotional responses, and

variability in memory and speed of information processing would likely present significant challenges to maintaining gainful employment.   He recommended that Plaintiff seek occupational or vocational rehabilitation if she were interested in working.

## II.   LEGAL STANDARD

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error.  Substantial evidence means more than a mere scintilla but less than a preponderance.   Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted).  This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Also under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence."   *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)(internal quotation omitted).

## III.   DISCUSSION

To qualify for disability benefits under the Social Security Act a claimant must show, among other things, that she is "under a disability." 42 U.S.C. §423(a)(1)(E).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).  A person is:

under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §423(d)(2)(A).

### A.    Five-Step Sequential Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims.  20 C.F.R. §404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  A finding of "not disabled" at any step in the sequential process will end the inquiry.  20 C.F.R. §404.1520(a)(4).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721.  The five steps are as follows:

1.   First, the ALJ determines whether the claimant is "doing substantial gainful activity."  20 C.F.R. §404.1520(a)(4)(i).  If so, the claimant is not disabled.

2.   If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment."   20 C.F.R.  §404.1520(a)(4)(ii).  To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §404.1520(c).  Basic work activities are the "abilities and aptitudes to do most jobs," for example: lifting; carrying; reaching; understanding, carrying out and remembering simple instructions; responding appropriately to co-workers; and dealing with changes in routine.  20 C.F.R. §404.1521(b).  Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months."   20 C.F.R. §404.1509 (incorporated by reference in 20 C.F.R. §404.1520(a)(4)(ii)).  The "step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  If the claimant does not have a severe impairment, the claimant is not disabled.

3.   Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. §404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] record." 20 C.F.R. §404.1520(e). A claimant's "residual functional capacity" (the "RFC") is the most she can do despite all her impairments, including those that are not severe, and any related symptoms. 20 C.F.R. §404.1545(a)(1).

4.   At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. §404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5.   At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. §404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." 20 C.F.R. §404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the Commissioner has the burden of proving the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In this case, the ALJ concluded at step five of the sequential process that Plaintiff was not disabled. The ALJ found that Plaintiff could not perform any of her past relevant work as a secretary, store manager, or office manager because it was all skilled labor, but that Plaintiff had the residual functional capacity to work as an office helper, a receptionist, and an assembly production worker. The ALJ determined that the Plaintiff would be limited to light, unskilled work.

**B.     Mental Functional Capacity Determination**

Plaintiff makes several arguments for reversing the Commissioner's denial of benefits, including arguing that the ALJ failed to perform a function-by-function assessment of Plaintiff's residual functional capacity.  Because the Court is reversing and remanding for a new hearing on that basis, the Court will not address the remaining arguments Plaintiff makes on appeal.  A new hearing may cure the other alleged errors listed by Plaintiff.

The ALJ found Plaintiff has the ability to perform "unskilled work," but did not do a function-by-function residual capacity determination.  Social Security Ruling 96-8p provides that a RFC assessment must first identify an individual's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§404.1545 & 416.945.  "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy and very heavy."  SSR 96-8p. And Social Security Ruling 85-15 provides that an ALJ "must not assume failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work. The decision requires careful consideration of the assessment of RFC."

The ALJ did not perform a function-by-function assessment of Plaintiff's mental residual functional capacity as required by the Social Security Rulings.  The Commissioner argues that the ALJ did not err because implicit in the ALJ's finding that Plaintiff could perform unskilled work were certain findings regarding Plaintiff's residual functional capabilities. But the Court finds that the ALJ must make the explicit findings required by the Social Security Rulings regarding Plaintiff's RFC.  Because the ALJ did not do so, the Court will reverse and remand for a new hearing on Plaintiff's entitlement to benefits.

///

///

///

1

Accordingly,

2

   **IT IS ORDERED** reversing the Commissioner's denial of benefits and remanding

3

for a new hearing.

4

   Dated this 30th day of July, 2012.

5

6

7

8

James A. Teilborg
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28